**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

THOMAS DORSEY,

                                        Plaintiff,

          - v -                                          Civ. No. 9:09-CV-0976
                                                              (FJS/RFT)

DR. MICHAEL HOGAN, *Ph.D., Commissioner,*
*Office of Mental Health;*
DR. TERRI MAXYMILLIAN, *Director of Sex Offender*
*Treatment Program, Central New York Psychiatric Center*,

                                        Defendants.

**APPEARANCES:**                        **OF COUNSEL:**

THOMAS DORSEY
Plaintiff, *Pro Se*
1363 Echo Lake Lane
Rocky Mount, N.C. 27803

HON. ERIC T. SCHNEIDERMAN              CHRISTINA L. ROBERTS-RYBA, ESQ.
New York State Attorney General        Assistant Attorney General
Attorney for Defendant
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

              <u>**REPORT-RECOMMENDATION and ORDER**</u>

          *Pro se* Plaintiff Thomas Dorsey filed this civil rights action, pursuant to 42 U.S.C. § 1983,

alleging that the Defendants violated his constitutional rights when, while at Central New York

Psychiatric Center ("CNYPC"), he was denied access to the courts and was subjected to certain

policies under CNYPC's civil confinement sex offender treatment program.  Dkt. No. 7, Am.

Compl.  Additionally, by a Motion for a Preliminary Injunction, Plaintiff seeks to enjoin the

Defendants from enforcing Article 10 of the New York Mental Hygiene Law ("MHL") against him.[1]

Dkt. No. 18, Pl. Mot. for Prelim. Inj.  Defendants oppose Plaintiff's Motion and seek dismissal of

this action under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), which Plaintiff opposes.

Dkt. Nos. 12, Defs.' Mot. to Dismiss; 15, Pl.'s Resp. to Mot; 19, Defs.' Opp'n to Mot. for Prelim.

Inj.  For the reasons that follow, we recommend that Plaintiff's Motion for a Preliminary Injunction

be **denied**, Defendant's Motion to Dismiss be **granted**, and this entire case be **dismissed**.

## I. BACKGROUND

In accordance with the standard used in assessing a motion to dismiss, the following facts

are derived from the allegations in Plaintiff's Amended Complaint and are taken as true.  *See Cruz*

*v. Beto*, 405 U.S. 319, 322 (1972).

On June 14, 2006, Plaintiff pled guilty to Attempted Assault in the Second Degree.  Am.

Compl. at ¶ 7 & Ex. A, Treatment Plan, dated May 18, 2009, at pp. 2-3.  He served a prison term

of three years and, upon completion of his sentence, a hearing was held under Article 10 of the MHL

to determine if probable cause existed to believe that Plaintiff's prior criminal history was sexually

motivated and if Plaintiff suffers from a mental abnormality.  *Id.* at ¶¶ 7 & 8.  Probable cause was

found at the hearing to detain Plaintiff as a sex offender requiring civil management pending the

outcome of a scheduled Article 10 state court jury trial on the matter.  *Id.* at ¶¶ 7 & 35; Exs. C1, C2,

& J.  Plaintiff was transferred to CNYPC on May 11, 2009, where he currently remains.  *Id.* at ¶ 8.

Plaintiff claims that upon his arrival to the CNYPC, "basically all" his property and

privileges he previously enjoyed while in the New York Department of Correctional Services'

---

[1] Enacted in 2007, Article 10 of the Mental Hygiene Law provides for involuntary civil commitment and treatment of certain individuals convicted of committing sex crimes in recognition of the danger recidivistic offenders present when released into the community.  *See* N.Y. MENTAL HYG. LAW § 10.01.

("DOCS") custody were taken away from him, without the "benefit of . . . [n]otice and a [h]earing." *Id.* at ¶ 8(a) & (d).  As part of the CNYPC's structured treatment plan, he is not allowed to have electrical appliances with power cords, nor touch other residents, such as to shake hands, and his freedom of movement is restricted to certain locations, such as when placed in an empty room as a punishment or escorted out of the dining room.  *Id.* ¶¶ 8, 9, & 28.  Plaintiff also states that the Sex Offender Treatment Program ("SOTP") at CNYPC has an unwritten policy of subjecting him to hardships, such as loss of television privileges, based on the misconduct of other residents.  *Id.* at ¶¶ 9, 10, & 13.

Furthermore, Plaintiff also complains that CNYPC has denied him access to the courts because no law library exists and they do not have "a trained lawyer to come in and assist [P]laintiff."  *Id.* at ¶ 8(f).  In a separate Motion, Plaintiff asks this Court to enjoin the Defendants from enforcing "policies and regulations that clearly amount[] to a campaign of harassment and serve[] the purpose [of] inflict[ing] hardships" and from applying or enforcing Article 10 of the MHL against him.  Dkt. No. 18, Pl.'s Mot. for Prelim. Inj., Thomas Dorsey Suppl. Aff., dated May 26, 2010, at ¶ 2.

## II. DISCUSSION

### A. Standard Of Review Under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing FED. R. CIV. P. 12(b)(1)).  Federal courts are "duty-bound . . . to address the issue of subject matter jurisdiction at the outset."  *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 929 (2d Cir. 1998).  In contemplating a motion to dismiss for

*-3-*

lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court must "accept as true all material factual allegations in the complaint[,]" though "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd.*, 968 F.2d 196 (2d Cir. 1992) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) & *Norton v. Larney*, 266 U.S. 511, 515 (1925)). "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that [jurisdiction] exists." *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002) (citations omitted); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Furthermore, because Plaintiff brings this action *pro se*, his submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curium*) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

**B. Standard Of Review Under Rule 12(b)(6)**

On a motion to dismiss, the trial court's function "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing

*-4-*

*Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008).  Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009).  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1960 (citing *Twombly*).[2]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1949.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

---

[2] By its opinion in *Bell Atl. Corp. v. Twombly* and then again in *Ashcroft v. Iqbal*, the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 561 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957)).  In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Id*. at 563.

unlawfully." *Id.*   Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* __ U.S. __, 129 S.Ct. at 1950-51.

With these standards in tow, we consider the plausibility of Plaintiff's Complaint.

### C. The *Younger* Abstention Doctrine

Plaintiff asks this Court to enjoin the Defendants from subjecting Plaintiff to the Article 10 civil confinement and CNYPC policies and practices that he finds offensive.  Defendants argue, however, that Plaintiff is barred from seeking relief in federal court for lack of subject matter jurisdiction because of his pending state court Article 10 proceeding.  *See* Dkt. No. 12-2, Defs.' Mem. of Law, at pp. 15-17.

Under *Younger v. Harris* and its progeny, federal courts abstain from intervening in ongoing state court proceedings when the "federal rights and federal interests . . . unduly interfere with the legitimate activities of the States."  *Younger v. Harris,* 401 U.S. 37, 44 (1971).  The abstention doctrine in *Younger*, which involved state criminal trials, has since been extended to cover "federal civil litigation challenging certain other state proceedings."  *Kaufman v. Kaye,* 466 F.3d 83, 86 (2d Cir. 2006) (citing *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002)).  The relevant question under *Younger* is "whether the state's procedural remedies *could* provide the

relief sought not whether the state *will* provide the constitutional ruling which the plaintiff seeks."
*Id*. at 87 (emphasis in original) (quoting *Spargo v. New York State Comm'n on Judicial Conduct*,
351 F.3d 65, 79 (2d Cir. 2003)).  Under the three conditions identified by the Second Circuit Court
of Appeals, *Younger* abstention is required when: "(1) there is a pending state proceeding, (2) that
implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an
adequate opportunity for judicial review of his or her federal constitutional claims."  *Spargo v. New
York State Comm'n on Judicial Conduct*, 351 F.3d at 75.

All three of the requirements for *Younger* abstention are met in the present case.  First, there
appears to be an ongoing and pending Article 10 state court civil confinement proceeding where a
jury will determine if the Plaintiff suffers from a mental abnormality that creates a predisposition
to commit sexually motivated offenses.  *See* Am. Compl. at ¶ 35; *see also* Defs.' Mem. of Law at
p. 3; Dkt. No. 15, Pl. Resp. to Mot., at ¶¶ 6-8.  Second, New York State has an important interest
in determining the constitutionality of its own sex offender programs.  *See Pratt v. Hogan*, 631 F.
Supp. 2d 192, 196 (N.D.N.Y. 2009).  Third, the similarity between the constitutional issue –
Plaintiff's request to be free from involuntary confinement due to the Article 10 probable cause
determination that he was a sex offender – means that Plaintiff has an adequate opportunity to
present these constitutional claims in his state court proceeding.  Therefore, *Younger* abstention is
appropriate over Plaintiff's claims for injunctive relief, as the intervention here by "federal judicial
power would disregard the comity between the States and the National Government."  *Pennzoil Co.
v. Texaco, Inc.*, 481 U.S. 1, 11 (1987) (quoted in *Pratt v. Hogan*, 631 F. Supp. 2d at 196).  This
Court recommends Plaintiff's Motion for a Preliminary Injunction and Plaintiff's claims for

injunctive relief in his Amended Complaint be **denied**.[3]  We will now consider Plaintiff's claims for

monetary damages.

### D. Dorsey's Claims

*1. Cruel and Unusual Punishment*

Dorsey asserts that certain policies and restrictions imposed on him at the CNYPC amount

to cruel and unusual punishment in violation of the Eighth Amendment.  Plaintiff, however, was

released by DOCS to CNYPC upon the completion of his prison term and thus is no longer a prison

inmate.  The Eighth Amendment, which prohibits the "cruel and unusual punishment of those

convicted of crimes, is therefore not applicable under the circumstances."  *Lane v. Carpinello*, 2009

WL 3074344, at *18 (N.D.N.Y. Sept. 29, 2009) (citing *Youngberg v. Romeo*, 457 U.S. 307, 312

(1982)).  This does not mean that a patient involuntarily committed for treatment is without

constitutional protections; rather, "[i]f it is cruel and unusual punishment to hold convicted criminals

in unsafe conditions, it must be unconstitutional to confine the involuntarily committed . . . in unsafe

conditions."  *Youngberg v. Romeo*, 457 U.S. at 315-16 (1982).[4]  Plaintiff's claims predicated upon

violations of the Eighth Amendment are instead analyzed and evaluated under the Due Process

---

[3] *Younger* abstention does not apply to a claim for monetary damages.  *See Rivers v. McLeod*, 252 F.3d 99, 101-02 (2d Cir. 2001); *see also Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000) ("When money damages, as opposed to equitable relief, are sought, it is less likely that unacceptable interference with the ongoing state proceeding, the evil against which *Younger* seeks to guard, would result from the federal court's exercise of jurisdiction.").  Furthermore, a stay of the federal proceedings, rather than dismissal, is often appropriate under *Younger*, *see id.* (citing *Deakins v. Monaghan*, 484 U.S. 193, 201-03 (1988)), but for the reasons explained in this Report-Recommendation and Order, we find Plaintiff's federal claims to be insufficient to withstand Defendants' Motion to Dismiss and thus apropos for dismissal.

[4] While Plaintiff does not allege that the conditions at CNYPC are unsafe, the same rationale applies to his general Eighth Amendment claims of freedom from cruel and unusual punishment.  *See, e.g.*, *Youngberg v. Romeo*, 457 U.S. at 316; *Dove v. City of New York*, 2007 WL 805786, at *7 (S.D.N.Y. Mar.15, 2007) ("However, because plaintiff was not a convicted prisoner at the time of the alleged deprivation of his federal rights, any claim arising from his confinement must be asserted under the Due Process Clause of the Fourteenth Amendment, rather than the provisions of the Eighth Amendment.")

clause of the Fourteenth Amendment. *See Lane v. Carpinello*, 2009 WL 3074344, at *18 (citing *Dove v. City of New York*, 2007 WL 805786, at *7 (S.D.N.Y. Mar. 15, 2007)).

       *2. Deprivation of Due Process under the Fourteenth Amendment*

       Liberally construing Dorsey's Amended Complaint, it appears that he is alleging substantive and procedural violations of his right to due process under the Fourteenth Amendment.  Accepting his Amended Complaint as true, Plaintiff takes offense at CNYPC's restrictions on his ability to freely move within the facility, use electronic devices with cords, including a typewriter, and have a drinking cup, among other similar complaints. *See* Am. Compl. at ¶¶ 8, 10, 17, 23, 26, 27, & 28. He also complains, albeit vaguely, of a deprivation of his due process rights when decrying the Article 10 procedures and his involuntary confinement as a sex offender with a mental abnormality as the result of a probable cause determination. *See id*. at ¶¶ 16, 24, 29, & 30; Pl.'s Mot. for Prelim. Inj., Mem. of Law, at pp. 1-2.

       "In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance the liberty of the individual and the demands of an organized society." *Youngberg v. Romeo*, 457 U.S. at 320 (internal quotation marks and citation omitted).  In the context of mental health professionals, "due process must be evaluated under a standard that allows physicians to operate effectively to protect the interests of the individuals about whom they make such judgments and of the public." *Olivier v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 189 (2d Cir. 2005) (citing *Youngberg v. Romeo*, 457 U.S. at 320).

       Plaintiff's claim that the Defendants' restriction on his freedom of movement within CNYPC does not present a violation of substantive due process.  While the "mere fact that [Plaintiff] has been committed [to involuntary psychiatric confinement] under proper procedures does not deprive

him of all substantive liberty interests under the Fourteenth Amendment," these interests are not absolute, as "there are occasions in which it is necessary for the State to restrain the movement of residents – for example, to protect them as well as others from violence." *Youngberg v. Romeo*, 457 U.S. at 315 & 319-20.   The same reasoning is appropriate for Defendant's restriction on physical touching between the residents.   Furthermore, the Supreme Court has recognized that the Constitution is not concerned with *de minimis* restrictions on individual liberty.   *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977).   Incidental restrictions relating to everyday life are necessary for proper and effective organized caretaking of institutional residents.   *Buthy v. Comm'r of the Office of Mental Health of New York*, 818 F.2d 1046, 1050 (2d Cir. 1987); *see, e.g.*, Am. Compl., Ex. G2, Office of Mental Health Lt., dated June 29, 2009 ("[T]he use of personally owned individual appliances causes significant drain on the electrical system of CNYPC. . . .  "[A]ppliances with attached electronic cords do pose a safety risk and are also disallowed in civil facilities maintained by the New York State Office of Mental Health.").   Dorsey makes no allegations that such restrictions interfered with his safety, denied him reasonable care, or are substantial departures from accepted professional judgment.   His Amended Complaint fails to allege sufficient facts to support a plausible claim that the Defendants deprived him of a protected liberty interest.   Accordingly, we find the entirety of Plaintiff's claimed substantive due process violations to be without merit.

Furthermore, to the extent that Plaintiff is bringing a claim that Article 10 is unconstitutional, we find this claim to be meritless.   The Article 10 New York State proceedings have due process protections built into them, of which the Plaintiff is currently availing.   The Sex Offender Management and Treatment Act, which created Article 10 of the Mental Hygiene Law, provides the specific internal procedures that must be followed for the transfer of certain convicted offenders to

psychiatric hospitals after release from prison.  *See State ex. rel. Harkavy c. Consilvio*, 870 N.E.2d 128, 131 (N.Y. 2007).  Plaintiff is currently confined at the CNYPC pursuant to the determination of a probable cause hearing, as set out under the procedure prescribed in Article 10.  Plaintiff also is utilizing his right to a civil confinement jury trial to determine if he in fact suffers from a mental abnormality within the meaning of Article 10.  These state court proceedings provide Plaintiff with sufficient procedural due process as well as avenues to obtain the relief he is seeking.

Therefore, because Plaintiff's claims do not rise to the level of a due process violation, we recommend that they be **denied**.

*3. Denial of Access to the Courts*

Plaintiff alleges that the Defendants are unconstitutionally denying his access to the courts because the CNYPC facility has no law library nor trained attorney to assist residents.  Am. Compl. at ¶¶ 8 & 25.

The Supreme Court has held that the constitutional right of access to courts entitles plaintiffs to "adequate law libraries or adequate assistance from persons trained in the law."  *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  To establish a *Bounds* violation, a plaintiff must show "actual injury," as "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance."  *Lewis v. Casey*, 518 U.S. 343, 349 & 351 (1996).  Thus, to establish a claim of inadequate access to the courts under *Bounds*, a plaintiff must show "'that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim'—for example, by demonstrating that he has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality."  *Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001) (citing *Lewis v. Casey*, 518 U.S. at 351).

*-11-*

"Undeniably[,] the civilly committed patients at the [CNYPC], like convicted inmates, enjoy a First Amendment right of meaningful access to the courts." *McChesney v. Hogan*, 2010 WL 3602660, at *12 (N.D.N.Y. Aug. 17, 2010) (citing *Lane v. Carpinello*, 2009 WL 3074344, at *24 n.26 (stating that the right of access to the courts stems from the First Amendment and the analysis is the same whether concerning a prison inmate or the involuntarily committed)).  Plaintiff does not, however, allege any prejudice or injury from Defendants' actions  and we find none in what has been presented to the Court.  Instead, it appears the Plaintiff has frequently been able to access the courts.[5]  *See* Am. Compl., Ex. J, N.Y. Supreme Court Denial of Pl.'s Leave to Proceed *in forma pauperis*, at pp. 2-4 (detailing Plaintiff's history of requested judicial intervention).  Without a demonstration that a "nonfrivolous legal claim had been frustrated or was being impeded," there is no basis to conclude Plaintiff's First Amendment right of access to the courts has been violated. *Lewis v. Casey*, 518 U.S. at 353.  We recommend that this claim be **dismissed**.

*4. Other Claims*

Plaintiff, in his Amended Complaint and his Motion for a Preliminary Injunction, mentions various other legal "buzz words" that are devoid of corresponding factual information.  In one instance, he characterizes the restrictions CNYPC places upon his freedom of movement – a restriction he consistently challenges as a deprivation of due process throughout his Amended Complaint – as amounting to false imprisonment. Am. Compl. at ¶ 14.  In another example, Plaintiff states that Defendants' actions are in violation of equal protection, though he does not expound on the characterization of the protected class he purportedly belongs to, or how Defendants' alleged

---

[5] Plaintiff also represents in his pleading that New York's Mental Hygiene Legal Services provided Plaintiff with the opportunity to have a trained attorney represent him in his pending Article 10 proceeding, which Plaintiff voluntarily refused in order to proceed *pro se*, indicating a lack of injury from the alleged denial of access to the courts. Am. Compl., Ex. C1.

actions treat this class adversely different than other similarly situated individuals.  *See* Dkt. No. 7-1, Pl. Mot. for Leave to File Am. Compl., at p. 1.  Because of the complete lack of factual allegations pertaining to these various claims, we recommend they be **dismissed**.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Motion for a Preliminary Injunction (Dkt. No. 18) be **DENIED**; and it is further

**RECOMMENDED**, that the Defendants' Motion to Dismiss the Amended Complaint (Dkt. No. 12)  be **GRANTED** and this entire action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. r. Civ. P. 72, 6(a), & 6(e).

Date:   March 4, 2011
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge